17-15-74 Paula Bennett versus Shawn Brewer Arguments not to exceed 15 minutes per side Ms. Melissa Salinas, Supervising Attorney to be argued by law student Sinead Redman Good afternoon, Your Honors. May it please the Court I am Melissa Salinas, Counsel of Record for Paula Bennett We appreciate the Court giving the Law Clinic an opportunity to represent Ms. Bennett in this case I would like to acknowledge four members of her family who traveled to be at today's argument and we're thankful to have them here. And with that, I will introduce Sinead Redman, a third-year law student who has been given permission to argue the case. Thank you May it please the Court, my name is Sinead Redman representing Petitioner Appellant Paula Bennett I'd like to reserve four minutes for rebuttal Your Honors, our respective briefs cover a lot of ground but put simply, Bennett should receive habeas relief because the State Court unreasonably applied Strickland when it failed to find Bennett's trial counsel constitutionally ineffective. Bennett is currently serving life without parole and as the District Court put it, the hard truth here is that she did not do much to receive this sentence. To be clear, the State Trial Court on Post-Conviction Review found that counsel's performance was deficient but unreasonably held that Bennett was not prejudiced by those deficiencies. Additionally, this Court should find that Bennett's appellate counsel was also constitutionally ineffective for failing to raise the meritorious trial IAC claims on direct appeal. Ms. Bennett therefore asks this Court to reverse the District Court's denial of habeas relief. At trial, Bennett was prejudiced when trial counsel failed to impeach a key witness, failed to investigate evidence and defenses relating to abuse inflicted upon her by her co-defendant and adopted an overall strategy so irrational that the Michigan Court of Appeals dissent called it bizarre and counterproductive. On appeal, Bennett's counsel performed deficiently, again prejudicing her when she failed to raise the meritorious trial IAC claims and request against their hearing. On post-conviction review, the State Trial Court agreed that Bennett's trial counsel was deficient. That's at page ID 2022. Can I ask you this? Isn't one of the problems we've got with this record the fact that we have the lawyer who represented her at trial has never been asked about why he adopted this sort of team strategy approach. There hasn't been an evidentiary hearing. Was one requested in the District Court? One was requested in the District Court and she was proceeding pro se at that time so she did request it and if it was technically inadequate in any way this court's precedent makes clear that pro se petitioners are given a little bit of leeway on that front. So she has requested an evidentiary hearing. So she requested an evidentiary hearing in the District Court and it was not her request was not granted. That's right. There was no evidentiary hearing. And did Judge O'Meara give a reason for it? I mean normally a District Judge will say well you don't need an evidentiary hearing because you had one in State Court. But in fact here there was not one in State Court. That's right. That's right. And I don't recall a specific reason that was mentioned. She had no evidentiary hearing, no gantor hearing at the State Court level. Was she unrepresented throughout the District Court proceedings? She was. She was. She was also unrepresented on post-conviction review which is when she initially brought her claims for her trial IAC claims and her appellate IAC claim. At trial she was prejudiced when her counsel failed to impeach one of the key witnesses. I want to revisit that assumption with you. It's a little hard for me to see. I get the argument about tying her defense to Benson's but it's a little hard for me to embrace this other argument you're making because generally under the law, what you say would have been established was that the witness in question did not entirely believe Mr. Benson's statements about killing Ms. McClure. But one person's belief doesn't have any tendency to establish another person's belief and Ms. Bennett was in a pretty different position in terms of the information to which she had access. Now, you might have been able to get in the statement on an argument that well, it goes generally into whether he was joking or not. If you wanted to pursue as was pursued here, the other shooter theory. But it doesn't get you near as far, it seems to me, as you seem to think it will get you. Well, the reason why we believe this is so essential is because Candler and Bennett were in close proximity with Benson all day as were several other of Ms. Bennett's friends and they all heard him saying the same things. They all heard him making these threats and then saying that he was going to go... Bennett is the only one who, other than the other friend, Mr. LaVardian, who heard him in the car, who and she was the only one who was in the position of taking the driver's seat and driving around the complex and so she knew they were there. She is reported to have said to others that they were going for the purpose of reclaiming their property. So even if whether that could be argued to be evidence that she thought they had another purpose, but it could also be argued to be evidence that they were going to in some way have an encounter with Ms. McClure. So Ms. Bennett just had a lot more information. She showed him how to get there. She drove around after Mr. Benson got out of the car as the driver. But at the time that she was providing the assistance, which was when she gave him directions, she had just gotten in the car with him after spending the day with him and Ms. Candler and listening to him say these kind of threatening comments and then alternating back to saying he was just going to go pick up the items. So the issue here is that Candler was the only one who said at trial that she took him seriously and her credibility would have been severely in question if Ms. Bennett's I do agree, though, that all of the claims kind of tie together under this umbrella of the team strategy that Bennett's counsel chose to kind of deploy here. Evidence against Mr. Benson was quite strong. The physical evidence against him was considerable, but evidence against Bennett was weak. The only evidence that there really was about her intent or about her knowledge was the directions that she gave Mr. Benson and then the statements from Ms. Candler saying that Ms. Candler took Benson seriously. The defense counsel did try to put that into evidence, right? But the trial court sustained the objection by the prosecutor that it was irrelevant? It was Benson's counsel that tried to impeach her on that and said that it was irrelevant. And as the dissent in the Michigan Court of Appeals said, while it may have been irrelevant to Benson, it was extremely relevant to Bennett because the key thing that the prosecution had to prove here was that she either intended to assist him or knew what he was planning to do. So the argument... You're saying it's relevant as to Bennett's state of mind, what Bennett may or may not have thought about it? I mean, I'm trying to... The trial judge ruled that it was irrelevant as to Benson's state of mind. Is that it? Then you're saying defense counsel did not pursue it as to Bennett's state of mind of what she... I'm just trying to connect it up here. They had two separate attorneys and two separate juries. The court was very clear throughout that there were two separate juries making separate determinations of guilt for each person. So the fact that it was ruled irrelevant as to Benson means that Bennett's jury would almost certainly not have that information unless Bennett's counsel were to perform as any reasonable counsel would and bring that up on behalf of his client because while it may have been irrelevant to Benson because there's so much physical evidence indicating that he committed the crime, it was very likely that Bennett would have perceived what Benson was intending to do. So Bennett would have perceived it exactly the same as the witness did? That's the argument? No, no. That's not necessarily the case. I perceive this as serious and then you could have impeached her by her other statement and then it goes to Bennett that Bennett... I'm just trying to see how you tie it up. Sure. So if Candler was impeached and then it became clear that in fact nobody not even the gentleman who was in the car with them on the way to Stephanie McClure's, if it became clear that none of these witnesses took him seriously then it would be even harder for a jury to believe that Bennett knew that he was planning to do this. If nobody else that he talked to that day took him seriously then there would be even less evidence that she should have known. And she did not testify? She did not testify, that's right. So all we have are these kind of circumstantial pieces of evidence from her friends who spent time with the two of them that day. Anything on the record about why she didn't testify? There's not. And that's also something that the Michigan Court of Appeals dissent raised in a footnote. That that was something that the Michigan Court of Appeals dissent would have liked to see explored at a Ginther hearing. And if I'm remembering correctly, there was some issue that the Michigan Court of Appeals said that's already been ruled on, it's not in front of us when in fact it had never been ruled on. What was that? I'm just having trouble remembering. Was that perhaps the appellate IAC claim? So on the post-conviction review, the opinion there said that, it's a little ambiguous, but it said that the appellate IAC claims had already been decided against her when in fact they had not. The first time she raised them was on post-conviction review. Of course, that was the first time she could have raised them, logically. I see that my time has expired. Thank you. Your Honors, and may it please the Court, Linus Banghart Lynn, Assistant Attorney General for the State of Michigan on behalf of the Respondent Warden and respectfully requesting affirmance. You clearly are not the trial counsel for the State down below. No, that's correct. Just habeas, just in this Court. I'm going to begin with, I think, the issue of the quote-unquote team strategy here. And I think that this is a classic example of reasonable trial strategy. Now, if it had been as described, that Ms. Bennett's counsel had put all of the eggs in this basket of Mr. Benson's guilt, I think we'd have a tougher case. I'm not going to concede anything. No, I disagree. That's an incorrect characterization of the State trial record. I think that's correct. I think that the District Court put it very well when it said that this claim is not sufficiently sensitive to the record. I think that certainly Ms. Bennett's counsel did make an issue of whether Benson had committed the crime because that was something the State needed to prove. It was not a foregone conclusion. They were holding a whole trial on it for Mr. Benson. Well, yeah, but there's something about it that suggests that they didn't get anywhere with maybe plea negotiations or something. I mean, the failure to give Bennett a chance to plead guilty and perhaps testify against him, that's the kind of thing that the record doesn't tell us. It might have been developed at a hearing. I'm sorry, Your Honor, the record does, and I wish I could give you a page ID number, but the record does show that Ms. Bennett did reject a plea offer. And I can submit a supplemental brief showing where in the trial. No, that's all right. There's something about sending her into trial that speaks to a team effort of some kind, though. Why was her counsel cross-examining the medical examiner when nothing about that witness's testimony related to her guilt or innocence? Because in order to find her guilty, the State needed to prove that Benson had committed the murder. That was an element of the crime. And what we're hearing is that counsel was not only made a mistake, but actually performed incompetently by not conceding one element of the crime. And that's... Well, that wasn't the only defense witness for Benson that he cross-examined, was it? No, no, exactly. Because he has a... There were two juries, and both juries had to find that Benson had committed the crime. And it's easy to sit here knowing what the verdict was and look back and say, well, here's a way that it could have been done differently. But at the time... You know, I think what we're sitting here, at least I am, I'm not speaking for my colleagues, sitting here saying is not hindsight in view of the verdict, but hindsight in view of this evidence. I mean, she's got to be shown to either... Well, let's say she has to be shown to either intend or know that this is going to happen. But that's not the end of it. She's got to encourage it. I've forgotten what the language of the instruction was and the statute is. She has to assist it. Yes. Insist or encourage. Is that the language? Yes, I have it somewhere, I think. Where is the assistance and encouragement in here? I don't have... I think it's promote or assist it might be. I'm not sure.  She knew that he was going to kill her and she told him where to go. How does the evidence show that she knew that? That's the problem. Because he was talking about killing her and he had a gun and he was saying that he was going to kill her and that was the evidence. And the thing is, that is an argument that trial counsel made. Trial counsel did not say, well, we all know that she did assist whatever happened but Benson wasn't the killer. That isn't what happened. Trial counsel said they haven't proven that Benson was the killer and also, even if he was and in fact, in the closing argument, defense counsel even says the evidence tends to show that he was. That's like the old business of saying my client is insane but if he wasn't insane he didn't do it. No, it's not because there's no inconsistency. Wait a minute. He didn't commit the murder but if he did, she didn't realize that he was going to do it. Is that where we are? No, whether he did or not, she didn't assist him in it. It's not even if he did, she didn't assist him. They haven't proven that he did it but if you think they've proven that he did it then you look at the lack of evidence that she actually knew which Your Honor was just asking me about. Let me go back then and ask you, where's the encouragement? The encouragement is saying to him, the trailer park is over here? No, it's the assistance, right. No encouragement is required but the assistance. He wants to kill her, he says so, he has a gun and he asks where he can find her. The argument would go that she provided him a critical element of the means to do that by giving him directions of where Ms. McClure could be found. That's right. There's something else in the record that suggests he knew where that trailer park was but he might not have known exactly where she was in it and that when they pulled up there she was outside. I think that's right. I think he needed the address. So if he knows where the trailer park is what assistance is she giving him? If I hand a murderer a gun it's no defense to say that the murderer could have gotten a gun. I understand that but certainly you see how weak her involvement is in terms of a life sentence without parole. That's a matter of state law what the punishment is for the crime that she did. She assisted a murderer in committing a murder. Can I ask you about is everything we need from the state transcript is that to be found? I'm not asking you about the docket sheet but I believe it's entry 21 on the district court docket sheet. Would the transcripts that were filed is that adequate and complete for us to find out if the argument you make has some validity or if it doesn't? That's correct. R21 dash and then 12345 up to R23. Yes, that's correct. So we've got the strategy argument and again this is not a case where the state had to prove to Bennett's jury that Benson had committed the murder. Benson's attorney certainly vigorously contested it and it wasn't unreasonable for Bennett's attorney to contest it as well in addition to the main argument. Can't you see how much more reasonable it would have been for them to come in with two separate attorneys and for Bennett to take from the very beginning the position that he's guilty and I want you to know I had very little idea or no idea that he was going to do it. Isn't that stronger than wasting time saying he didn't do it and you've got to prove he did? It might be and I think if that had happened I would be up here explaining why defense counsel's decision to concede an element of the crime was a reasonable trial strategy and I think I might be able to do that because there are more than one reasonable way to try a case. Wait a minute. Flesh that out a little for me. You're suggesting that Bennett should have gone in and said of course he did it. That's element one of what the state needs to prove against me. I concede it. Don't have to prove it. No physical evidence. No testimony. You don't have to listen to anybody on that. I concede that he did it. And now I would have to say why that's reasonable when you plead not guilty, put every element of the case in contest to then come in and say well except for this element which you do have to prove to another jury. This is not something where Benson pleaded guilty because their case was a foregone conclusion. He went to trial. He didn't come in and concede yes I did it. The evidence is overwhelming. He put them to their and so she did the same thing and it was reasonable for both attorneys to say you have to prove what the law requires you to prove. He virtually had an eyewitness to what had gone on and then there was his statements to people of what he had done. How could there have been any doubt in anybody's mind that he was guilty? Which is why you also argue that she didn't know that he was planning to do it which is what trial counsel also did and also impeached Brianna Candler with her inconsistent statements and also tried to raise a reasonable doubt about what she knew and that was the main thrust that was the main thrust of defense counsel's argument was her lack of knowledge that Mr. Benson intended this murder at the time she gave assistance. He argued both and it was reasonable to argue both because the state was required to prove both. What if I asked you about the language again and it turns out to be not only does she need to know but she has to give either assistance or encouragement. Well she gave assistance so there's no... Well the two seem to be sort of on the same level. The assistance she gave was turned out not to be assistance because he knew exactly where he was going after all. You're asking... And the use of the term encouragement seems to suggest that you really have to be behind it pushing him a little and saying this is really what you ought to do and I'm here with you and I've got your back. I guess I would respond in two ways. First I think that that's a question of the sufficiency of the evidence which isn't before the... Well it is and we haven't talked about all of that but the fact that she filed a police report that morning indicates that she was looking for the law and the judicial system to take care of it. The fact that she never said to anybody all day long he's got a gun and I think he's out to get McClure and what she did to us doesn't bother me if he does do it. And then the fact that she lost it completely when the shots were fired. There's something about this that indicates that she may not have been totally into this which is what you would want in an aiding and abetting situation. Which is why it goes to whether she intended or knew that he intended and there's no requirement that she intend the death and I don't think that that was the basis of the jury's conviction. I don't think that there's a serious contention that she intended it which is why the problem... I look at page 8 of the reply brief where it says any reasonable attorney would have focused the defense on her lack of intent but that's not correct. Her intent doesn't matter. It's her knowledge that matters. Did she assist and did she know when she assisted what she was assisting and the evidence suggests that she did. I think the second response I would have to that line of questioning is that that's a matter of state law. Insufficiency is a federal claim but it's up to state law to define what constitutes sufficient evidence and then it's a federal claim whether the prosecution has brought forth enough evidence. We don't have an issue of sufficiency before us. No, we don't. Exactly. No, it was not. It wasn't in the petition. The Michigan Court of Appeals decision that the dissenter would not have dismissed the case he would have had a new trial or a dither hearing. Exactly. So it's... Evidently the dissenter even found the evidence sufficient. Yes. Exactly, Your Honor. Let me put it on a little different basis. We don't have the sufficiency of the evidence in front of us as such. What we have is a claim that if this was the evidence her lawyer gave a completely unreasonable strategy to try to get her acquitted. Right. And whether the strategy that he used was reasonable or unreasonable and if it's unreasonable it's ineffective assistance to counsel. And whether it was reasonable or not reasonable was the evidence that was presented that he knew about before trial and that was presented at trial. Certainly. And that brings me back to one of the first things I said which is that if counsel had put all of his eggs or even most of his eggs in the basket of Kieran Benson's innocence I wouldn't concede anything but we'd have a tougher case. That's not what happened. The thrust of the defense was Ms. Bennett's lack of knowledge and not taking him seriously. And that is what counsel argued. Mostly without conceding the defense that there was reasonable doubt as to Benson's guilt altogether. Which, again, is it the best way to try a case? It's not a question before this Court. Is it a reasonable way to try the case? It absolutely is. Would it help if somebody had gotten him on the stand, our trial lawyer and said what in the world were you thinking when you did this? It might but I will respond to that by saying that there is a presumption that counsel does perform effectively and is making good decisions and it is an objective standard. If any competent attorney could have tried this case this way then it really doesn't matter. It can be helpful to have this particular attorney's objective standard. If any reasonable attorney could have tried this case this way then it's not ineffective. I'm going to give you a little bit of advice. If you ever run into this situation, don't try it that way. Every case is different and I hope I never run into a case like this. Certainly for a lot of reasons. I haven't really gotten to talk about the battered woman syndrome in 40 seconds. I will just say that it does not go to the knowledge. It goes to intent, which was not at issue. That is the basis that it's been argued on, is that she didn't intend. A battered woman defense could have shown that she did not intend. The reason she did this was not because she intended Ms. McClure's death but for other reasons. The reasons why she did what she did are not at issue in the case. What is at issue in the case is what she did and whether she knew when she did it what she was assisting. That is all I will say unless there are any other questions. I do have one question. Supposing we decide that the failure to grant her request in district court to have an evidentiary hearing was error, especially in the situation where she is pro se and there has never been a hearing. Can we send it back down there to have an evidentiary hearing on the question of ineffective assistance of counsel? We don't usually touch that question unless there is evidence in the record that would go to show that. Is the failure to have a district court evidentiary hearing before us? I don't believe that was in the briefs. I don't think that was in the briefs at all, Your Honor. Is it in the Certificate of Appealability on this habeas case? I don't believe that it is. I feel more comfortable if there had been an evidentiary hearing but I usually just decide the issues that are raised that are before us. I appreciate that, Judge. I would encourage this court to do that and I think that, well, without repeating myself about it being an objective standard, I won't say that that would be a correct course for this court to take. I don't think that it would. I mean, in terms of do you possess the legal authority to do so, I think that's the answer. It really is far preferable for it to be before us because the circumstances under which an evidentiary hearing should be held are very circumscribed now. Right, exactly. Under the applicable case law. We'd have to create some sort of record that we created ourselves about why it would or would not be appropriate. Right, and we would have to look at 2254E2, we would have to look at diligence, we would have to look at Cullen v. Pinholster. None of these things were in our brief. I'm sorry, I've prolonged it. Now I'm telling you your time is up. No, that's all right. I thank you, Your Honors, and again, we respectfully request affirmance. All right, Ms. Redman. Thank you. Judge Daughtry, you've mentioned your concerns about a lack of an evidentiary hearing here, and we fully agree. Did you appeal the denial of the district court to grant it? No, that was not in the Certificate of Appealability. Why not? But in our brief, we do discuss a Ginther hearing and request a Ginther hearing and discuss how Bennett's appellate counsel was ineffective for failing to request a Ginther hearing, and that's another avenue. If the district court erred in failing to grant the motion for an evidentiary hearing, why did you not appeal that? Why did we not move to expand the Certificate of Appealability? Use that as a grounds for your Certificate of Appealability. We do believe that on this record, there is enough to remand and grant habeas relief. But it's not necessary. It's not necessary. The ineffective assistance of counsel issues here jump off the page. They jump off the page to the point that the Michigan Court of Appeals' dissent raised these issues sui sponte. The thing I'm most interested in is you and your adversary apparently have a very different view of what the record that was before the district court reveals about what happened in the trial court and to what do you look most strongly, what portions of the trial do you look most strongly to support your point of view? Well, I think that the entire trial, but for a few sentences in the closing argument, points to the fact that Bennett's counsel was performing completely unreasonably and ineffectively by choosing to... But for a few small instances. But I think it is certainly the case that he put most of his eggs in this basket. We agreed with you, the Wayne Circuit Court, Judge Callahan, he found deficient performance. That's right. But he found no prejudice. And that's the ruling that is entitled to deference in this habeas petition. And we would have to find his ruling of no prejudice was an unreasonable application of Strickland. Tell me why you think it is. That's right. And that is what we're arguing. I think that's the crux of it. I may agree with you that there was deficient performance here, but you still have to get past the state court ruling that even with this deficient performance, there was no prejudice. And that's what we have to give state court deference to. Of course. And we have to find that's an unreasonable application. So tell me why. Right. So to demonstrate prejudice under Strickland, Ms. Bennett needs to show only that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been deferent. Then under our deference, under EPA, that we have to give them deference, the state court here. That's right. You should not give the state court deference because that is an unreasonable application of the Strickland standard. Given that the evidence against Ms. Bennett was so weak... I'm not entirely sure that you're not overcharacterizing the evidence against her. She and Mr. Bennett had a long argument before they left to go. She went with him. She... depending on what the record reveals to us, she may have provided him the directions. She remained with the car. She drove the car around. She was involved quite a lot in the actual carrying out of the murder. I'm not sure that every reasonable judicial officer would find that to be so weak, or find her a fact for that matter, would find that to be so weak. Respectfully, Your Honor, I disagree. I think that the amount of assistance that she provided Benson was extremely limited. In fact, Ms. McClure was even standing outside the apartment complex and he knew... It was a happenstance. She didn't need to provide very much. As Judge O'Meara said, she really didn't do very much at all here. I see that my time has expired. I did want to briefly mention that in Mackie v. Russell, this Court explained, and I think this goes to your question, Judge Griffin, that Strickland requires that cumulative effective errors have to be scrutinized more closely than usual when a case is close, as Mackie's was and as this is. And that we think... But if it's a close case, doesn't the tie go to the state court? I mean, it's got to be almost an overwhelming case that no reasonable state court could have ruled that there was no prejudice under these circumstances. And close cases, we get reversed by the Supreme Court on habeas all the time. They do it by peremptory order these days. And if it's close, the tie goes to the state court, doesn't it? Well, in Mackie, I think what they're talking about there is that when the evidence is close, as it is here. The ruling on prejudice. I think that's the key to this, that even if I go with you and I say this is deficient performance and a jurist could have found prejudice, is the state court ruling here, and this is the Wayne Circuit Court ruling, is that just a totally unreasonable application of Strickland? And that's really what we've got. I mean, it's really out of the mainstream. And that's what the habeas is about here. And if it's debatable, we can't reverse the state court. And if it's close, I don't think we can reverse the state court. And... I think on the unique facts of this case, what Mackie is requiring this court to do under Strickland, the clearly established federal law here, is to consider the fact that the impact of the potential errors becomes magnified. Yeah, that's Mackie. And what that means here is that in a case where she is serving a really long life without parole sentence and there was limited physical evidence against her, limited circumstantial evidence against her, these errors that both the trial counsel and the appellate counsel made need to be scrutinized even more closely to ensure that they satisfy the Sixth Amendment requirement. Thank you. We appreciate very much the argument that both of you have given. Ms. Salinas, we appreciate very much the clinic's involvement in this matter. And Ms. Redman, we appreciate your presentation on behalf of Ms. Bennett. You did a fine job, and we look for you to be back before us often. Thank you. I appreciate that.